IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

William Harris,                                          Case No. 3:09CV613

           Plaintiff

     v.                                                    ORDER

Prudential Insurance Company of
       America, et al.,

           Defendants

This is a dispute over denial of ERISA benefits and recoupment of previously paid benefits under Prudential Insurance Company of America's [Prudential] long term disability plan [Plan]. Plaintiff William Harris is a beneficiary under the Plan. Defendant Allsup Company [Allsup] is a third party service provider to Prudential.

Harris alleges defendants: 1) breached Plan language, and violated a provision of the Social Security Act, 42 U.S.C. § 405; 2) improperly denied Harris's claim for Plan benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. [ERISA]; and 3) violated the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968  [RICO].

Pending are Allsup's motion to dismiss [Doc. 31] and Prudential's partial motion to dismiss [Doc. 32]. For the reasons discussed below, Allsup's motion is granted and Prudential's motion is granted in part and denied in part.

**Background**

Prudential administers a long term employee disability plan to plaintiff's employer, Tractor Supply Company. Harris became unable to work, and applied for Plan benefits. Prudential initially paid Harris benefits, but later determined he did not meet Plan coverage requirements and denied his continuing claims.

After the Plan began paying Harris benefits, and before it ceased, Harris, as required by the Plan, applied for and received Social Security Disability Insurance [SSDI] benefits. According to its terms, the Plan supplements SSDI, entitling Plan beneficiaries to retain only the amount of Plan benefits that exceed SSDI benefits.

When the Social Security Administration awards SSDI benefits, it pays a lump sum for back benefits owed for the period between the date of eligibility to the date of final approval.

Because Prudential processes claims more quickly than the Social Security Administration, Prudential gives beneficiaries a choice between either receiving full Plan benefits from the outset or having the Plan's benefits reduced by that beneficiary's anticipated—but yet to be determined or awarded—SSDI benefits.

Under the Plan, beneficiaries choosing to receive full benefits from Prudential who later receive SSDI benefits must repay the lump sum back award obtained through SSDI:

**What Happens If You Receive a Lump Sum Payment**

> If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

[Doc. 11-2, at 18].

The Plan also states:

> **What Happens if Prudential Overpays Your Claim?**
>
> Prudential has the right to recover any overpayments due to:
> . . .
> Your receipt of deductible sources of income.
>
> You must reimburse us in full. We will determine the method by which the repayment is to be made.
> Prudential will not recover more money than the amount we paid you.

[Doc. 11-2, at 23].

The Plan lists benefits received under the Social Security Act as a "deductible source of income." [Doc. 11-2, at 15].

Harris chose to accept full Plan benefits from Prudential, and later received a SSDI lump sum back payment.

Prudential employs Allsup to assist beneficiaries in applying for SSDI and to collect Plan overpayments made as a result of beneficiaries' later SSDI award. Prudential encourages Plan beneficiaries to use Allsup's services when applying for SSDI. During this process, Allsup has beneficiaries sign authorization forms allowing automatically withdrawals of the SSDI benefits from beneficiary's bank account to reimburse Prudential for the overpayment:

> I acknowledge that if I obtain a Social Security disability benefit award, all or a portion of any retroactive Social Security benefit must be repaid to Prudential Financial  . . .  in accordance with the terms of my disability benefit plan (the "Plan"). I authorize Allsup, Inc., ("Allsup"), on behalf of Prudential Financial, to withdraw an amount not exceeding the amount needed to satisfy this obligation (the "Obligation") from the bank account identified below  . . . "

3

[Doc. 11-1, at 1].

Prudential also requires beneficiaries to sign a reimbursement agreement when filing a

claim:

> If any benefits under the Social Security Act are awarded retroactively, I agree to
> repay Prudential immediately the amount paid to me under this Agreement in
> excess of the amount to which I would have been entitled under the terms of the
> plan.

[Doc. 11-5, at 1].

After Harris qualified for Plan benefits, Allsup assisted him during the SSDI application

process. Harris signed Allsup's authorization form, and on Harris's receipt of SSDI, Allsup

automatically transferred the entire lump sum payment from his bank account.

Prudential subsequently denied Harris's continuing claims under the Plan.

Harris brought this suit, claiming: 1) Allsup's collection methods, for which Prudential is

vicariously liable, breached Plan language and were illegal under the Social Security Act; 2)

defendants wrongfully denied Plan benefits and breached fiduciary duties under ERISA; and 3)

defendants' actions violate RICO.

Allsup moves to dismiss all claims, and Prudential moves to dismiss claims one and

three, for lack of jurisdiction and failure to state a claim.

**Standard of Review**

Plaintiff invokes federal jurisdiction; he, therefore, bears the burden of establishing its

existence. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998). If a claim is

not supported by federal jurisdiction, it must be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s]

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

4

*Ashcroft v. Iqbal*,    U.S.    , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### I. Harris Cannot State an ERISA Claim Against Allsup

Allsup moves to dismiss Harris's ERISA claims, alleging that, because Allsup is not a Plan fiduciary, Allsup cannot be liable under ERISA. I agree.

Although Harris does not clearly plead his ERISA claims,[1] Count Two appears to bring claims for wrongful denial of plan benefits under 29 U.S.C. § 1132(a)(1)(B) and breach of fiduciary duties under 29 U.S.C. § 1109(a).

Plan beneficiaries may only bring § 1132 claims against the "plan." Under § 1132(a)(1):

---

[1] Count Two, asserts benefit denial under § 1132(g), rather than the benefits provision, § 1132(a)(1)(B).

(a) Persons empowered to bring a civil action. A civil action may be brought--
  .  .  .
by a participant or beneficiary—

\* \* \* \* \*

  .  .  .
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\* \* \* \* \*

  .  .  .
(d) Status of employee benefit plan as entity.
  .  .  .
Any money judgment under this title against an employee benefit plan shall be enforceable *only against the plan* as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this title.

(Emphasis added).

Courts have interpreted this section to allow § 1132(a)(1)(B) claims against the Plan, its administrators, or fiduciaries. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) (citing *Boyer v. J.A. Majors Company Employees' Profit Sharing Plan*, 481 F. Supp. 454, 457-58 (N.D. Ga. 1979)); *see also Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1490 (7th Cir. 1996); *Gonzalez v. Mesa Verde Country Club*, 1991 WL 266541, *3 (9th Cir. 1991) (unpublished disposition).

Likewise, breach of fiduciary duty claims may only be brought against plan fiduciaries. 29 U.S.C. § 1109(a).

ERISA defines a plan fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,  .  .  .  or has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

6

A relationship between a plan administrator and a third party "does not give rise to ERISA fiduciary status unless the [relationship] authorizes the [third] party to exercise discretion" over the plan or its assets. *Seaway Food Town, Inc. v. Med. Mut.*, 347 F.3d 610, 619 (6th Cir. 2003).

Harris avers in his complaint that Allsup is Prudential's "agent," is a Plan "trustee," collected debts on Prudential's behalf, and convinced him to sign its authorization form. [Doc. 11, at 3, 8, 11].

The Plan does not define the terms "trustee" and "agent," and these labels thus do not imply that Allsup retained discretionary authority. The issue does not turn on whether a conventional agency or trustee relationship existed, but on whether Prudential delegated discretionary authority to Allsup. *See, e.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan."). Harris references no specific facts showing that Allsup took any discretionary action or otherwise established a relationship with Prudential authorizing Allsup to exercise discretion. *See Seaway*, *supra*, 347 F.3d at 619.

As the Eighth Circuit noted, "[p]ersons who provide professional services to plan administrators 'are not ERISA fiduciaries unless they "transcend the normal role" and exercise discretionary authority.'" *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir. 2001) (citing *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993)). Third party service providers only tangentially affecting the Plan are not plan fiduciaries. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000) (citing *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 666 (6th Cir. 1998)).

Harris has alleged no facts stating that Allsup transcended its ancillary business role with Prudential, nor than Allsup's actions sufficiently affected plan assets so as to characterize them as "discretionary." Though Allsup affected plan assets through its debt collection services, it did not choose from whom to collect. Allsup simply provided professional services, first helping beneficiaries obtain Social Security benefits, and then collecting monies Prudential told Allsup beneficiaries owed. Harris, therefore, has not sufficiently pled that Allsup served as a Plan fiduciary. As such, Allsup may not be held liable under ERISA.

I therefore grant Allsup's motion to dismiss Count Two.[2]

## II. Section 407(a)

Both defendants contend that Count One of plaintiff's complaint must be dismissed because § 407(a) of the Social Security Act does not provide a private right of action.[3]

---

[2] While *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000), permits equitable relief against a non-fiduciary "knowing participant" under § 1132(a)(3), any equitable relief Harris might be seeking against Allsup (*e.g.*, an injunction against using the preauthorized withdrawal form) would be directed against conduct that has already occurred; therefore there is nothing to enjoin. *See Crosby v. Bowater Inc. Retirement Plan*, 382 F.3d 587, 597 (6th Cir. 2004) (holding that a beneficiary seeking equitable relief under § 1132(a)(3) against past conduct to which he has already been subjected has no justiciable claim)

[3] Allsup also argues I lack subject matter jurisdiction over a claim based on § 407(a) because the Social Security Act confers no original jurisdiction on federal district courts. In his complaint, plaintiff alleges that: "The jurisdiction of this Court arises under ERISA, 29 U.S.C. § 1001, § 1132(6), RICO, 18 U.S.C. §§ 1961-1968 and 42 U.S.C. § 407(A) [sic], Social Security Act." [Doc. 11, at 4]. As Allsup correctly asserts, § 407(a) does not reference federal court jurisdiction. Harris raises, however, an allegation of a violation of federal law, giving me jurisdiction under 28 U.S.C. § 1331.

8

The section at issue provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

As the Supreme Court has stated, "[t]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).

With regard to § 407 specifically, the statute, "does not expressly create a private right of action, and nothing in Section 407 suggests that Congress intended to create a private right of action." *Alexander v. Bank of America*, 2007 WL 3046637, *2 (W.D. Mo.). In *Alexander*, the plaintiff argued that the defendant bank violated § 407(a) by garnishing Social Security benefits from her checking account. The court held that the only remedy the plaintiff could obtain under § 407(a) was a release of the garnishment, which the bank had already done. *Id.*

In his opposition briefs, Harris seemingly concedes this point. *See* Doc. 38, at 6 ("Defendant Allsup argues Plaintiffs are crafting a separate cause of action for violation of § 407(a). This is simply not the case. Plaintiffs allege in the Amended Complaint the Defendants knew or should have known that having each Plaintiff sign this preauthorized withdrawal form to pay back their retroactive lump sum Social Security Disability award violated <u>both</u> the Plan and federal and state law."); [Doc. 39, at 14] (stating: "Plaintiffs' [sic] are pursuing their class action based upon a violation of the ERISA disability plan, not bringing a separate action pursuant to §

407(a) of the Social Security Act" and "Plaintiffs are not pursuing a separate cause of action in violation of § 407(a) of the Social Security Act.").

Harris goes on, however, to argue about how defendants' actions violate § 407(a) and points to cases addressing the section. The cases he points to in the ERISA context do not demonstrate that a plaintiff has a private cause of action under § 407(a). Rather, they are cases where a plaintiff sued for denial of ERISA benefits, and the insurer counterclaimed under ERISA for reimbursement and the beneficiary used § 407(a) as a defense. *E.g., Dillards, Inc. v. Liberty Life Assurance* Co., 456 F.3d 894, 900-901 (8th Cir. 2006) (affirming grant of summary judgment for plan on counterclaim seeking to recover overpayment of benefits resulting from the receipt of Social Security disability payments and holding that such action does not implicate § 407(a)); *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F. Supp. 2d 722, 753 (N.D. Ill. 2009); *Mattox v. Life Ins. Co. of N.* Am., 536 F. Supp. 2d 1307, 1327 (N.D. Ga. 2008); *Fregeau v. Life Ins. Co. of N.A.*, 490 F. Supp. 2d 928 (N.D. Ill 2007); *Bosin v. Liberty Life Assurance Co.*, 2007 WL 1101187, *11 (W.D. Mich. 2007).

These cases thus do not provide a basis for Harris to assert a cause of action based on § 407(a). Though he argues that he is not asserting a separate cause of action, any claim that defendants' actions violated § 407(a), even if in conjunction with an argument that these actions violated the Plan, is in fact a claim based directly on § 407(a).

That section creates no private right of action. Harris's claim based on a violation of § 407(a) is therefore dismissed.

Harris must, therefore, base his claim under Count One on ERISA.[4] As discussed above, Allsup is not a fiduciary, and thus cannot be liable for a violation of the Plan. *Mertens*, *supra* 508 U.S. at 249 (rejecting claim that ERISA affords a monetary cause of action against a non-fiduciary who knowingly participates in a fiduciary's breach of fiduciary duty). Because Harris offers no other basis for its claim against Allsup in Count One, the claim against Allsup is dismissed.

### III. Harris Adequately Pleads an ERISA Claim Against Prudential in Count One

---

[4] ERISA allows a plan beneficiary to sue to "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," § 1132(a)(1)(B), or "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," § 1132(a)(3).

Harris contends that Allsup and Prudential violated Plan language and § 407(a) through Allsup's collection of his lump sum back SSDI payment.[5] Although Allsup collected the debt, Harris alleges that Prudential is liable based on agency principles.[6]

The gravamen of Harris's argument that Prudential's actions violate the Plan is based on the timing and wording of Allsup's recoupment agreement. *See* Doc. 39, at 13 ("Had Prudential simply sought to put a lien on paid ERISA benefits it paid each Plaintiff who obtained a Social Security Disability award, Prudential would not have violated § 407(a) and the ERISA plan").

First, Harris states that he is pursuing a claim "for violations of the Prudential ERISA Plan which does not allow Prudential to recoup Social Security Disability benefits to offset ERISA long-term disability benefits." [Doc. 39, at 16]. Harris seems to be arguing that because Allsup's authorization form specifically targets "all or a portion of any retroactive Social Security benefit," [Doc. 11-1], it violates the Plan. The Plan, however, explicitly provides that if a beneficiary receiving long term disability benefits later receives SSDI benefits, the beneficiary must reimburse the Plan. Harris has therefore not adequately alleged a violation of the Plan on this basis.

Second, in his complaint, Harris points to an inconsistency between Plan language and the collection method. The Plan states: "If you receive a lump sum payment from any deductible source of income, lump sum *will be prorated* on a monthly basis over the time period for which

---

[5] As discussed above, § 407(a) does not provide Harris with a private right of action. This section, therefore only addresses whether Harris has adequately alleged a violation of the Plan.

[6] Prudential concedes, for purposes of this motion only, that it can be held responsible for Allsup's actions. [Doc. 31, at 10 n.6].

the settlement was given. If no time period is stated, we will use a reasonable one." [Doc. 11-2, at 18] (emphasis added).

Harris alleges that this provision conflicts with the reimbursement agreement, which states: "If any benefits under the Social Security Act are awarded retroactively, I agree to repay Prudential *immediately* the amount paid to me under this Agreement in excess of the amount to which I would have been entitled under the terms of the plan." [Doc. 11-5, at 1] (emphasis added). This is enough to allege that the method of recoupment—requiring the payment in lump sum rather than in a prorated fashion—may have violated the Plan's terms.[7]

Harris, therefore, has adequately pled a cause of action for violation of the Plan against Prudential in Count One. Prudential's motion to dismiss is therefore denied.

## IV. Harris Fails to State a RICO Claim Against Defendants

Harris alleges Allsup and Prudential violated 18 U.S.C. § 1962(b). Although the complaint is unclear, it appears that Harris contends Allsup's pre-authorization form constituted both a "racketeering activity" and "collection of an unlawful debt" in violation of § 1962(b). That section states:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. 1962(b).

Because Harris has not sufficiently pled a racketeering activity or collection of an unlawful debt, I grant defendants' motion to dismiss this claim.

---

[7] Prudential argues that this cannot violate the Plan because under the Plan, it reserved the right to determine the method of repayment. I find, however, that Harris has adequately alleged a conflict between the Plan's language and the method of recoupment.

13

## A. Harris Fails to Plead a "Racketeering Activity"

Harris contends that Defendants committed mail fraud, and that this act serves as a predicate "racketeering" act supporting its RICO violation.

Mail fraud, under 42 U.S.C. § 1341, requires: 1) having devised a scheme to defraud or obtain property by means of false or fraudulent misrepresentations 2) to use the mail 3) with the specific intent of executing that scheme or attempting to do so. *See Central Distribs. of Beer v. Connecticut*, 5 F.3d 181, 184 (6th Cir. 1993). Harris must plead, then, that defendants made a "false statement or omission of fact." *Id.*

Harris agreed, in the authorization form, to allow Allsup to withdraw funds from his bank account when Harris received SSDI benefits. That form restated Harris's obligation to repay the Plan if he received SSDI benefits, and clearly stated that Harris could revoke the authorization at any time prior to a funds transfer. The notices contained within the pre-authorization form are substantially consistent with Harris's preexisting contractual obligation under the Plan to repay the Plan if SSDI covers his claim, as was the case here.[8]

Harris relies on two allegations to support his mail fraud claim. The first is that defendants lied to Harris, inducing him to turn over his SSDI benefits in lump sum rather than under the Plan's prorated recovery procedures. The second allegation is that Defendants knowingly violated § 407(a) by requiring Plaintiff to sign, and mail to Allsup, the authorization form. Specifically, Harris alleges in opposition to the motion to dismiss:

---

[8] The Plan, the Reimbursement Agreement supplied by Prudential, and the Authorization form supplied by Allsup all explained Harris's obligation to repay. These documents differed, however, in whether the debt would be repaid in lump sum or over an extended period. That issue is addressed above.

14

> Both these Defendants, either individually or jointly and severally, purposely, knowingly, and willfully violated 42 U.S.C. § 407(A) [sic] in that they knew or easily should have known that having each claimant of this class sign this mailed Pre-Authorized Withdrawal Form to pay back retroactive Social Security Disability benefits to Prudential Financial was in violation of not only the Prudential Long-Term Disability Plan but also relevant Federal and State Law.

[Doc. 11, at 10].

The pre-authorization form recited the terms of the Plan. The Plan describes the procedure for determining the amount of disability coverage. [Doc. 11-2, at 13]. The last step in the procedure is to subtract any sources of deductible income from the disability calculation. *Id.* Benefits received under the Social Security Act are expressly listed as a source of deductible income. *Id.* at 15.

To survive defendant's Rule 12(b)(6) motion, Harris need only state a plausible claim. Here, however, it is undeniable that the Plan requires Harris to repay Prudential if Harris receives deductible income, such as SSDI. Harris points to no other facts tending to establish a material misrepresentation or false statement. *Cent. Distributors of Beer, supra*, 5. F.3d at 194.

Even assuming, *arguendo*, that the Plan requirement to repay SSDI benefits would be considered a prohibited assignment of rights under § 407(a) and would therefore be unenforceable, this does not constitute fraud. Again, fraud requires a misrepresentation, and Allsup did nothing fraudulent to induce Harris to sign the pre-authorization agreement. Allsup merely told Harris that allowing the funds transfer would decrease the amount of paper work he would later be required to complete, and would fulfill his contractual obligation to repay Prudential. These statements do not rise to the level of fraud.

Defendants likewise did not commit fraud by omission when they failed to notify Harris of § 407(a). Every citizen, including Harris, is presumed to know the law. *Gilmore v. Taylor*, 508

15

U.S. 333, 359 (1993) (citing *Atkins v. Parker*, 472 U.S. 115, 130 (1985)). I therefore hold that this is not the type of "omission" that may suffice to allege fraud.

Harris has, therefore, failed to adequately plead mail fraud.

### B. Harris Fails to Plead an "Unlawful Debt" Adequately

Harris also fails to adequately plead that the Plan requirement to repay overpayments constituted an "unlawful debt." In fact, the deduction for SSDI benefits presents no legal problem: there is no law prohibiting a Plan from calculating benefits based on SSDI benefits. Although the Social Security Act prohibits garnishment or assignment of SSDI benefits, the Act does not make Harris's debt unlawful, but merely concerns a allegedly unlawful collection of the lawful debt.

Because Harris has not pled fraud or an unlawful debt, defendants' motion to dismiss Harris's RICO claim is granted.

Because I have held that the Plan language does require repayment[9] and that failing to notify Harris of § 407(a) is not fraudulent as a matter of law, Harris cannot sufficiently plead mail fraud.[10] I therefore also deny Harris's motion to amend.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

---

[9]Although the method of repayment may have violated Plan language, this is properly addressed above.

[10]Harris also alleges that Allsup was able to convince him to sign the form in order to "avoid 'annoying paperwork.'" [Doc. 11, at 14]. I reject any argument that this constitute fraudulent misrepresentation because Harris does not allege that this was, in fact, a misrepresentation.

1. Allsup's motion to dismiss [Doc. 31], be, and hereby is granted; and

2. Prudential's partial motion to dismiss [Doc. 32], be, and hereby is granted in part, and denied in part.

3. A scheduling conference is set for March 25, 2010 at 10:00 a.m.  Out of counsel may participate by phone.

So Ordered.

s/James G. Carr
James G. Carr
Chief Judge

17